IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND

                                      :
VALERIE WOOLDRIDGE, ET AL.
                                      :

      v.                              :     Civil Action No. DKC 2007-3482

                                      :

WORLD CHAMPIONSHIP SPORTS
   NETWORK, INC., ET AL.              :

                            **MEMORANDUM OPINION**

      Presently pending and ready for resolution in this breach of

contract action are motions for summary judgment filed by

Defendants Gevity HR, Inc., Gevity HR L.P., Gevity HR IV, Limited

Partnership, Gevity Insurance Agency, Inc., and Gevity XIV, LLC

(collectively, "Gevity" or "Gevity Defendants") (Paper 36)[1] and

Defendant World Championship Sports Network, Inc. ("WCSN") (Paper

38).  The issues are fully briefed and the court now rules pursuant

to Local Rule 105.6, no hearing being deemed necessary.  For the

reasons that follow, the motions for summary judgment will be

granted.

**I.   Background**

      This action arises from the alleged failure of Defendants to

pay life insurance benefits to the beneficiaries of Robert

Wooldridge, Jr. ("Mr. Wooldridge"), a former employee of Defendant

WCSN who was struck by a car and killed on July 15, 2006.

Plaintiffs are Mr. Wooldridge's widow, Valerie Wooldridge ("Ms.

_____

      [1] Gevity's memorandum of law and exhibits in support of their
motion were separately docketed as Paper 37.

Wooldridge"), their minor children, Mr. Wooldridge's parents, and Mr. Wooldridge's estate.

Mr. Wooldridge was a writer and editor for WCSN, a Delaware corporation that distributes sports content over the Internet and on television.  In May 2006, Carlos Silva, President and Chief Operating Officer of WCSN, and Jen Canestraro, Vice President, Production and Products, spoke with Mr. Wooldridge regarding his interest in the Managing Editor position at WCSN's Bethesda, Maryland, office, which was to open the following month.  On May 16, 2006, WCSN sent Mr. Wooldridge a letter formally offering him employment with the company and detailing the terms and conditions thereof.  Mr. Wooldridge accepted the position, via email, on May 24, 2006, and began working for WCSN on June 12, 2006.

In May and June 2006, WCSN and Gevity engaged in discussions regarding Gevity serving as an outsource provider of human resources services to WCSN.  Gevity, a "Professional Employer Organization" based in Bradenton, Florida, provides an array of administrative benefits and services to businesses nationwide, including payroll administration, workers' compensation insurance, and the opportunity to elect health insurance and other benefits through third-party providers.  The discussions between WCSN and Gevity resulted in the creation of a proposal, signed by the parties on June 15, 2006, outlining the process by which Gevity and WSCN would work toward a definitive agreement as to their business

relationship.   The  proposal  contemplated,  *inter  alia*,  the
submission  of  enrollment  forms  by  WCSN  employees  as  part  of
Gevity's  "onboarding"  process.   Gevity  assigned  Lori  Johnson  to
oversee  this  process.   In  accordance  with  the  proposal,  Yasuko
Furuya,  WCSN's  Controller,  discussed  with  Ms.  Johnson  the  timeline
that  would  lead  to  execution  of  a  Public  Services  Agreement
("PSA"),  which  allocates  the  rights  and  responsibilities  of  the
parties  under  Gevity's  business  model.

As  part  of  this  process,  WCSN's  employees  received  a  benefits
enrollment  guide  on  June  23,  2006.   Ms.  Johnson  held  a  benefit
enrollment  meeting  on  June  27,  2006,  at  WCSN's  office  in  Los
Angeles,  California.   Employees  of  the  Maryland  office,  including
Mr.  Wooldridge,  participated  by  phone.   Mr.  Wooldridge  completed  a
Benefits  Election/Change  Form  provided  to  WCSN  through  the  Gevity
Defendants  on  June  30,  2006,  and  selected  a  life  insurance  plan
providing  $200,000  in  coverage.   The  parties  dispute  whether  the
life  insurance  benefits  were  available  immediately  or  were  not  to
be  effective  until  August  1,  2006.   The  PSA,  however,  was  not
executed  until  July  31,  2006,  and  by  its  plain  language,  did  not
become  effective  until  the  first  day  of  the  first  payroll  that
Gevity  actually  processed.   (Paper  37,  Ex.  A-1,  PSA  at  ¶  9).

Mr.  Wooldridge  was  killed  on  July  15,  2006,  when  he  was  struck
by  a  vehicle  in  front  of  his  home.   On  November  3,  2006,  Valerie
Wooldridge,  through  counsel,  made  a  formal  demand  to  collect  the

life insurance benefits payable under Mr. Wooldridge's benefits plan. Gevity denied her request on November 27, 2006, explaining that Mr. Wooldridge was not yet covered by life insurance benefits through Gevity at the time of his death.

On October 29, 2007, Plaintiffs filed a complaint in the Circuit Court for Montgomery County, Maryland, alleging: (1) negligent misrepresentation against Defendant WCSN, (2) breach of contract against Defendant WCSN, and (3) breach of contract against the Gevity Defendants. (Paper 2). The Gevity Defendants removed the action to this court on December 31, 2007, on the basis of diversity jurisdiction. On January 2, 2008, WCSN consented to and joined the Gevity Defendants' removal (Paper 10), and Gevity filed an answer on the same date (Paper 9). WCSN filed its answer on January 9, 2008. (Paper 15). Also on January 9, 2008, the court entered a scheduling order pursuant to which discovery would close on May 23, 2008. On May 22, 2008, the discovery deadline was extended to June 27, 2008. On the same date, the Gevity Defendants filed an unopposed motion for leave to file first amended answer (Paper 28), which was granted on May 27, 2008 (Paper 31). Following discovery, all Defendants moved for summary judgment. (Papers 36, 38).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celetox Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her

responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4ᵗʰ Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A.    WCSN's Motion for Summary Judgment

### 1.    Negligent Misrepresentation

Plaintiffs allege that WCSN and Mr. Wooldridge engaged in negotiations on and before June 12, 2006, regarding Mr. Wooldridge's prospective employment with WCSN. Plaintiffs further allege that during the negotiations WCSN made promises to Mr. Wooldridge with respect to the availability of employee benefits upon his acceptance of employment, and that Mr. Wooldridge relied on these representations in determining whether to accept WCSN's offer. Plaintiffs contend that WCSN owed Mr. Wooldridge a duty of care to state accurately the terms and conditions of his prospective employment, and breached that duty by misrepresenting

a material fact, namely, that benefits would be made available to him immediately upon the start of his employment with WCSN.

Under Maryland law, to prevail on a claim of negligent misrepresentation, a plaintiff must establish that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement would be acted upon by the plaintiff; (3) the defendant had knowledge that the plaintiff would probably rely on the statement, which, if erroneous, would cause loss or injury; (4) the plaintiff, justifiably, took action in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence. *See Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 477 (2000); *Griesi v. Atlantic Gen. Hosp. Corp.*, 360 Md. 1, 11 (2000) (citing *Weisman v. Connors*, 312 Md. 428, 444 (1988)).

WCSN argues that Plaintiffs' negligent misrepresentation claim fails because there is no evidence that WCSN made any false statement to Mr. Wooldridge regarding his benefits. WCSN insists that it repeatedly informed Mr. Wooldridge, both orally and in writing, that stock options and benefits, including life insurance, would not be immediately available. As support, Defendant offers the affidavit of Carlos Silva, President and Chief Operating Officer of WCSN. Mr. Silva states the following:

7

> Before offering Mr. Wooldridge employment with
> WCSN, I explained that WCSN did not yet
> provide benefits, including health or life
> insurance, for employees. . . . I explained
> that WCSN was working toward providing
> benefits for employees at some point in the
> future, but did not provide a date by which
> benefits would be available. . . . At the
> time Mr. Wooldridge began working for WCSN,
> the company did not yet provide health
> insurance, life insurance or any other form of
> benefits for any of its employees.

(Paper 38, Ex. A, Silva Aff. at ¶¶ 5-6, 8).  Additionally, WCSN

provides an email sent on June 23, 2006, from Ms. Furuya to several

WCSN employees, including Mr. Wooldridge, reminding them of the

upcoming Health Benefits enrollment meetings, and specifically

stating, "*Health Benefits will be effective August 1, 2006*."

(Paper 38, Ex. I, Furuya email) (emphasis added).   WCSN also

provides the "Benefits Enrollment Guide" that Mr. Wooldridge

received on June 23, 2006.   In the section titled, "Know When

You're Actually Covered," the Guide states:

> Coverage effective dates may vary based on
> choices made by you and your employer.  Check
> with your benefits administrator or with
> Gevity for details concerning your coverage
> effective date options.   If you are an
> employee of a new Gevity client, your company
> will choose the date for your group's benefits
> to become effective.

(Paper 38, Ex. H, Benefits Enrollment Guide, at 4).  Finally, Ms.

Johnson, Gevity's consultant to WCSN, affirms that she informed

employees present at the benefits enrollment meetings, including

Mr. Wooldridge, that "WCSN and Gevity were working together towards

the goal of WCSN having benefits available to them on August 1, 2006." (Paper 37, Ex. A, Johnson Decl. at ¶ 8).

Plaintiffs respond that the facts and circumstances surrounding Mr. Wooldridge's employment with WCSN demonstrate that Mr. Wooldridge was misled about the nature and extent of benefits to which he was entitled through his employment with Defendant WCSN. Plaintiffs assert that Mr. Wooldridge had discussions with his wife regarding when benefits, including life insurance, would be available. Ms. Wooldridge testified on deposition that she had several conversations with her husband regarding the availability of benefits at around this time, and he told her that his life insurance with WCSN would begin "immediately" and "we're covered now." (Paper 42, Ex. 1, Wooldridge Dep. at 62:12-17). WCSN asserts that these statements constitute inadmissible hearsay.

On a motion for summary judgment, the court may only consider evidence that is admissible. Fed.R.Civ.P. 56(e); *see also Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251-52 (4th Cir.), *cert. denied*, 502 U.S. 939 (1991); *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973-74 n.8 (4th Cir. 1990). Ms. Wooldridge's deposition testimony as to statements that her husband made regarding the effective date of his insurance coverage is inadmissible hearsay that does not fall within any exception.

Plaintiffs concede that, if offered to prove the truth of what was said to Mr. Wooldridge by WCSN, the testimony of Ms. Wooldridge

would constitute hearsay, but argue that the testimony is admissible under the present sense impression, state of mind, and/or residual exceptions.   The testimony plainly is not admissible as a present sense impression, as it is undisputed that Mr. Wooldridge was not explaining to his wife "an event or condition made while [he] was perceiving the event or condition, or immediately thereafter."   Fed.R.Evid. 803(1).   The state of mind exception also cannot apply, as the statements at issue unquestionably relate to Mr. Wooldridge's "memory or belief" of what occurred during his meetings with WCSN executives, and such statements are specifically excluded under Federal Rule of Evidence 803(3), except in limited circumstances not presented here. Moreover, Plaintiffs must prove that WCSN made the allegedly false statements, not merely that Mr. Wooldridge believed these statements were made.   The residual exception is similarly unavailing.   That exception is intended to be used sparingly, and only in exceptional circumstances.   *United States v. Heyward*, 729 F.2d 297, 299-300 (4th Cir. 1984).   Ms. Wooldridge's testimony is vague as to when these conversations with her husband took place, what precisely was said, or with whom Mr. Wooldridge was speaking when the alleged misrepresentations regarding his benefits were made.   Thus, it lacks the circumstantial guarantees of trustworthiness sufficient to qualify under the residual exception.

In sum, Plaintiffs have failed to produce any admissible evidence opposing WCSN's motion for summary judgment on the negligent representation claim.  Accordingly, the motion will be granted with respect to this claim.

### 2.  Breach of Contract

Plaintiffs allege that WCSN engaged in negotiations with Mr. Wooldridge before his June 12, 2006, start date, during which promises were made regarding the immediate availability of benefits upon his acceptance of the job.  Plaintiffs argue that the failure of WCSN to provide benefits to Mr. Wooldridge from the inception of his employment was a substantial, material breach of the employment contract.[2]

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).  Under the objective theory of contracts, which applies in Maryland,

> a court is to determine from the language of
> the agreement, what a reasonable person in the
> position of the parties would have understood
> the contract to mean at the time the contract
> was entered into; when the language of the
> contract is plain and unambiguous, there is no
> room for construction as the courts will

---

[2] Despite the fact that it was never executed, both parties refer to WCSN's May 16, 2006, offer letter as the "contract" or "employment agreement" between Mr. Wooldridge and WCSN. (Paper 38, at 12; Paper 42, at 4).

> presume that the parties meant what they
> expressed.

*Mathis v. Hargrove*, 166 Md.App. 286, 318-19 (2005).

WCSN contends that Plaintiffs cannot establish that a breach occurred because the contract unambiguously states that Mr. Wooldridge would only receive the benefits that WCSN made available to its employees from time to time.  WCSN points to the specific language of its offer letter to Mr. Wooldridge, which provides, "during your employment, you will be eligible to participate in all employee benefit plans made generally available by WCSN from time to time to its employees, subject to plan terms and generally applicable WCSN policies." (Paper 38, Ex. D, Offer ltr. at ¶ 5).

Benefits clearly were not available through WCSN until August 1, 2006, at the earliest.  The offer letter provides that Mr. Wooldridge could participate in a benefit plan provided by WCSN; however, at the time of his death, no such plan was effective. Because WCSN did not have a contractual obligation to provide benefits that were not yet available, there could be no breach of contract.

Plaintiffs insist that the benefits clause of the contract is ambiguous and requires consideration of prior negotiations between Mr. Wooldridge and WCSN to determine the intent of the parties. Specifically, Plaintiffs assert that the following paragraph is unclear and ambiguous:

> In addition to your compensation set forth
> above, during your employment, you will be
> eligible to participate in all employee
> benefit plans made generally available by WCSN
> from time to time to its employees, subject to
> plan terms and generally applicable WCSN
> policies, including vacation. These benefits,
> of course, may be modified, changed,
> supplemented or discontinued from time-to-time
> at the sole discretion of WCSN, and the
> provision of such benefits to you in no way
> changes or impacts your status as an at-will
> employee.

(Paper 38, Ex. D, Offer ltr. at ¶ 5).

According to Plaintiffs, because the contract is silent regarding the precise terms and conditions of the promised compensation and benefits package, the court must look outside the agreement and consider parol evidence to determine the intent of the parties. Plaintiffs insist that interpretation of this paragraph requires reference to pre-employment negotiations between Mr. Wooldridge and WCSN. WCSN observes that the contract contains an integration clause, which provides that the letter constitutes the entire offer regarding the terms and conditions of Mr. Wooldridge's employment. Therefore, according to WCSN, parol evidence is inadmissible.

"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." Restatement (Second) of Contracts § 209(1) (1981). "Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete

agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." *Id.* at § 209(3).  An integrated agreement is "completely integrated" if it is adopted as the "complete and exclusive statement of the terms of the agreement," *id.* at § 210(1); otherwise, it is "partially integrated," *id.* at § 210(2). Whether an agreement is integrated, and whether it is completely or partially integrated, are preliminary questions determined by the court.  *Id.* at §§ 209(2), 210(3).  In this analysis, "[t]he essential question is whether the parties intended their writing to be the final or complete expression of their agreement."  1-5 Murray on Contracts § 81 (Lexis 2001).

If an agreement is completely integrated, "parol evidence of a prior agreement within the scope of the integrated agreement may not be considered by the trier of fact." *Id.* at §§ 213(2), 216. Parol evidence is admissible, however, "to explain what the parties meant to express when using an ambiguous term in an integrated agreement." *Alamria v. Telcor Int'l, Inc.*, 920 F.Supp. 658, 673 (D.Md. 1996); *Helferstay v. Creamer*, 58 Md.App. 263, 273-74 ("[P]arol evidence may not be admitted to vary, explain or contradict the written contract but this rule does not preclude the admission of parol evidence to explain an ambiguous term."), *cert. denied*, 300 Md. 794 (1984) . "Ambiguity arises if, to a reasonable person, the language used is susceptible of more than one meaning

or is doubtful of meaning." *Anderson Adventures, LLC v. Sam & Murphy, Inc.*, 176 Md.App. 164, 178 (2007) (internal marks and citation omitted).  "[I]t is well-settled that a contract is not ambiguous merely because of a controversy concerning the proper interpretation of its terms." *B & P Enter. v. Overland Equip. Co.*, 133 Md.App. 583, 605 (2000) (citing *Lerner Corp. v. Three Winthrop Props., Inc.*, 124 Md.App. 679, 685 (1999)).

Here, the contract contains a merger clause that specifically states, "[t]his letter supersedes any prior agreements, promises or statements (whether oral or written) regarding the offered terms of your employment with WCSN."  Thus, the contract is fully integrated, and parol evidence will not be considered unless the contract is ambiguous.

The language of the benefits provision is not ambiguous.  The contract provides that Mr. Wooldridge would be able to participate in benefit programs "made generally available by WCSN from time to time to employees."  Because a benefit program was not available at the time the parties entered into the employment contract, it was impossible for WCSN to provide the precise terms and conditions of Mr. Wooldridge's benefits package.  Indeed, Mr. Wooldridge did not sign and date his benefits election form until June 30, 2006, more than a month after he accepted employment and prior to the time the Gevity program became effective, after August 1, 2006.  (Paper 38, Ex. K, Benefits Election/Change Form; Paper 42, Ex. 5, PSA).

Accordingly, summary judgment will be granted in favor of WCSN with respect to the breach of contract claim.

### B.   The Gevity Defendants' Motion for Summary Judgment

As noted above, Plaintiffs advance a single breach of contract claim against the Gevity Defendants.   Plaintiffs allege that the Gevity Defendants accepted the application for plan benefits completed by Mr. Wooldridge, and thereby agreed to provide plan benefits through the acceptance of employment with WCSN and the election of benefits by Mr. Wooldridge.   Plaintiffs insist that the failure by the Gevity Defendants to provide benefits to them as third-party beneficiaries was a substantial, material breach of the PSA.

The Gevity Defendants argue that they are entitled to summary judgment for three reasons: (1) Plaintiffs are not third-party beneficiaries of the PSA; (2) any claim for breach of the PSA is preempted by the Employee Retirement Income Security Act of 1964 ("ERISA"); and (3) Gevity did not breach the PSA.

### 1.   Third-Party Beneficiary Status

The PSA is governed by Florida law.   To establish an action for breach of a third-party beneficiary contract under Florida law, Plaintiffs must prove four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to

the third party resulting from the breach." *Found. Health v. Westside EKG Assocs.*, 944 So.2d 188, 194-95 (Fla. 2006) (internal quotation omitted). "A person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1030-31 (Fla.Dist.Ct.App. 1994); *see also Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 279-80 (Fla. 1985) ("It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract").

The Gevity Defendants argue that the PSA specifically disclaims that it is intended to benefit anyone other than the contracting parties.  They observe that the PSA specifically provides, "This Agreement is intended solely for the mutual benefit of the parties hereto and does not create any rights in a third party." (Paper 37, Ex. A-1, PSA).  The Gevity Defendants contend that the PSA applies only to Gevity and WCSN, not to any other person or entity, and any benefit received by WCSN's employees is merely incidental to their employment with WCSN.

Plaintiffs fail to establish the elements of a third-party beneficiary contract.  It is undisputed that the first element is satisfied; the PSA is a contract.  Plaintiffs' claim fails, however, because they cannot satisfy the second element.  There is no clear or manifest intent of the contracting parties that the PSA

would directly benefit Plaintiffs.   Indeed, the plain language of the contract unambiguously states just the opposite: "This Agreement is intended *solely for the mutual benefit of the parties hereto and* *does not* create any rights in a third party." (Paper 37, Ex. A-1, at ¶ 20) (emphasis added).   In deciding whether the language of an agreement is ambiguous, the court must determine whether the language is "reasonably susceptible to more than one interpretation." *Maccaferri Gabions, Inc. v. Dynateria, Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996).   Here, the language of the PSA clearly states that it does not create rights in any third party. This language is not subject to more than one interpretation.

Plaintiffs concede that the parties to the PSA are Gevity and WCSN; they also acknowledge that the contract specifically states that the PSA does not create any rights in a third party. Plaintiffs maintain, however, that this section of the contract frustrates its overall intent and creates an unjust outcome against individuals who are intended beneficiaries.   Plaintiffs assert that it was clearly the intent of Gevity and WCSN to institute an employee benefits program for WCSN employees, and that Mr. Wooldridge was a WCSN employee at the relevant time.   However, Plaintiffs do not offer any evidence tending to contradict the plain language of the contract, nor do they demonstrate that Gevity's intent was something other than what it expressly stated

in the PSA.  Accordingly, summary judgment will be granted in favor of the Gevity Defendants as to the breach of contract claim.

### 2.  ERISA Preemption

Assuming, *arguendo*, that Plaintiffs were third-party beneficiaries to the contract, the Gevity Defendants insist they are entitled to summary judgment because the breach of contract claim is preempted by ERISA.  Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that is covered by ERISA.  Section 514(a)'s preemptive scope is not limited to state laws designed to affect employee benefit plans or those governing the subject matters covered by ERISA.  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983).  In fact, the Supreme Court of the United States has interpreted the phrase "relate to" in § 514(a) very broadly: "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Shaw*, 463 U.S. at 96-97.

ERISA's expansive preemption clause was designed to "establish pension plan regulation as exclusively a federal concern" by "eliminating the threat of conflicting and inconsistent State and local regulation."  *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (internal quotations omitted).  In particular, Congress intended to preempt state laws "'providing alternate

19

enforcement mechanisms' for employees to obtain ERISA plan benefits." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995)).

The Gevity Defendants argue that Plaintiffs' state law breach of contract claim clearly "relates to" an ERISA plan and is therefore preempted by § 514(a). They observe that the PSA specifically states that Gevity will offer benefits to its clients' employees after participation and contribution requirements are met and upon Gevity's determination that an employee is eligible. Gevity asserts that a determination of the merits of Plaintiffs' state law breach of contract claim requires review and interpretation of an ERISA plan. The gravamen of Plaintiffs' complaint, they allege, is that Gevity, as Plan Administrator, incorrectly determined that Mr. Wooldridge was not covered by the PSA at the time of his death. Gevity insists that the only claim Plaintiffs may bring in such circumstances is a civil enforcement claim for benefits due under 29 U.S.C. 1132(a)(1)(B).[3]

Plaintiffs respond that the Gevity Defendants fail to show that the objectives of ERISA are clearly intended to override their state law contract claim. Quoting *Wilmington Shipping Co. v. New*

---

[3] Section 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."

*England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007), Plaintiffs argue that the preemption clause is not without boundaries and will not apply where a cause is "too tenuous, remote, or peripheral" in its relationship to ERISA.  (Paper 42, at 10).

Plaintiffs' claims against Gevity began when Ms. Wooldridge sought to collect life insurance benefits under the Gevity Health & Welfare Plan and the claims administrator denied the claim.  On November 3, 2006, Plaintiffs sent a letter, by counsel, to Lori Johnson, Human Resources Consultant for Gevity, formally demanding life insurance benefits.  (Paper 37, Ex. A-16, Johnson ltr.).  In response, Gevity informed Plaintiffs' attorney that Mr. Wooldridge was not covered by life insurance benefits through Gevity at the time of his death.  (*Id.*, Ex. A-17, Quinn ltr.).  Plaintiffs now advance a claim against Gevity in this court alleging that the refusal to pay these benefits was a breach of contract, and seek to receive the insurance benefits that were previously denied. Plaintiffs' claim is not tenuous, remote, or peripheral, but rather a clear attempt to enforce the PSA, "which is undeniably an ERISA-covered employee benefit plan." *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 863 (4th Cir. 1994).  Accordingly, any claim that Plaintiff would have had as a third-party beneficiary of the contract would have been preempted by ERISA.[4]

---

[4] Plaintiffs do not seek to convert their claim to one for benefits under ERISA.

### 3.   **Breach of the PSA**

In any event, the Gevity Defendants assert, summary judgment should be granted in their favor because Gevity did not breach the PSA. Florida's "cardinal rule" of contract construction is "to ascertain the intention of the contracting parties and to give effect to that intention if it can be done consistently with legal principles." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F.Supp.2d 1290, 1307 (S.D.Fla. 2008) (citing *J.A. Jones Constr. Co. v. Zack Co.*, 232 So.2d 447, 449-50 (Fla.Dist.Ct.App. 1970)).

The PSA contains the following provisions regarding when the contract becomes effective and when benefits become available under the contract:

> After this Agreement has been executed by an Authorized Representative of each party, it shall become effective on the first day of the first payroll period for which the Client pays Gevity's invoice covering Services for [employee] hours that have been reported to the Client and accepted by Gevity. . . .

(Paper 37, Ex. A-1, at ¶ 9).  The Agreement also states:

> If the Client selects Full Benefits on the Proposal and participation and contribution requirements are met, Gevity will offer all available benefits available to [employees] who are determined by Gevity to be eligible under the provisions of each applicable Benefit plan that is in effect during the term of this Agreement.

(*Id.* at ¶ 32A).

Thus, based on the Agreement, the effective date was the first day of the first payroll period for which Gevity provided payroll services to WCSN.  The PSA provided that benefits would be available to WCSN employees when "participation and contribution" requirements were met and Gevity made a determination as to eligibility.  Defendants provide evidence demonstrating that the first payroll period for which Gevity provided payroll services began on July 16, 2006, the day after Mr. Wooldridge's death on July 15, 2006.  Specifically, the payment register for the first payroll shows that the applicable pay period was July 16-29, 2006. (Paper 37, Ex. A-15, Payment Register).  A client report reflects, moreover, that WCSN's start date with Gevity was July 16, 2006. (*Id.*, Ex. A-11, Client Report).  Furthermore, a Gevity "Welcome Letter" from Lori Johnson to Yasuko Furuya states, "[y]our start date is: July 16, 2006," and "[y]our first pay period is: July 16, 2006 - July 29, 2006."  (*Id.*, Ex. A-13, Welcome ltr.).

According to Plaintiffs, Mr. Wooldridge thought that, upon completion of the enrollment forms, he would be entitled to immediate coverage.  Plaintiffs insist that Mr. Wooldridge was unaware of the terms of the PSA, did not participate in contract negotiations with respect to the PSA, and should not be prejudiced by information that was either inaccurate or misrepresented to him.

These arguments are misplaced, however.  Mr. Wooldridge's alleged "misunderstanding" of the terms of the PSA and its

effective date cannot form the basis of a breach of contract claim against Gevity.   Although Mr. Wooldridge may have "intended to obtain immediate benefits upon completing his Benefits Election/Change Form," it is undisputed that the PSA did not become effective until July 16, 2006, and that Mr. Wooldridge was informed by both Gevity and WCSN that benefits were not effective until August 1, 2006.   Thus, even if Plaintiffs were third-party beneficiaries under the PSA and their claim was not preempted by ERISA, it is undisputed that the PSA was not yet in effect at the time of Mr. Wooldridge's death.   Gevity did not breach the contract by declining to pay insurance benefits for a claim arising out of events that occurred before the effective date of both the PSA and Mr. Wooldridge's individual employee benefits package. Accordingly, the Gevity Defendants' motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, the motions for summary judgment will be granted.   A separate Order will follow.


<u>            /s/                    </u>
DEBORAH K. CHASANOW
United States District Judge